IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY T. MCKINLEY,

    Petitioner,

v.

                              Civil Action No.: BAH-23-681

CARLOS D. BIVENS and THE ATTORNEY
GENERAL OF THE STATE OF
MARYLAND

    Respondents.

**MEMORANDUM OPINION**

Self-represented Petitioner, Gary T. McKinley, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he challenges the validity of his convictions and sentence in the Circuit Court for Prince George's County, Maryland, for second degree murder and use of a handgun in a crime of violence. ECF 1. The Petition is fully briefed. ECFs 1, 7, 12. Upon review of the submitted materials, the Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2025); Rules 1(b) and 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For the reasons set forth below, the Petition will be DENIED.

**I.    BACKGROUND**

    **A.    Convictions and Sentence**

On June 3, 2008, McKinley was indicted in the Circuit Court for Prince George's County for first degree murder and use of a handgun in a crime of violence. ECF 7-1, at 6–7. On September 12, 2008, the state filed a notice of intent to seek a sentence of life without the possibility of parole.

ECF 7-4, at 4, 8-9. On January 22, 2009, McKinley entered an *Alford*[1] plea to second degree murder and use of a handgun in a crime of violence. ECF 7-2. The state described the factual basis for the plea as follows:

> [O]n April 13th, 2008, at approximately 1:59 p.m., the Defendant who is seated to my left in an orange jumpsuit, Gary Theodore McKinley, flagged down Prince George's County Police Officer Clacken in the 2200 Block of Alice Avenue, Oxon Hill, Prince George's County, Maryland. The Defendant stated that his girlfriend was possibly dead with blood all over her. The Defendant then directed Officer Clacken to 2140 Alice Avenue, Apartment 101 in Oxon Hill Prince George's County, Maryland. The officer called for backup.
>
> While the Defendant remained outside of the apartment, Prince George's County Police went into the apartment and located the victim, Sheena Marie Day in her bed suffering from a gunshot wound to the head. Prince George's County Fire Department paramedics responded and pronounced the victim dead.
>
> She was subsequently transported to the office of the Chief Medical Examiner in Baltimore City where an autopsy was conducted by Dr. Greenberg. The autopsy determined that the cause of death was a gunshot wound to the left side of the back of the head. Recovered during the autopsy was a deformed copper jacket and multiple gray metal fragments. Based on the nature of the injury and the recovered items, they are consistent with use of a handgun in the commission of the homicide.
>
> The Defendant made several statements to the officer both on the scene and subsequently at the police station, indicating that he took responsibility for the death of Ms. Day. All events did occur in Prince George's County, Maryland

*Id.* at 17–18.

At the outset of the plea hearing, the trial court noted that it had received a report from Dr. Polk of the Department of Health and Hygiene finding McKinley both competent to stand trial and

---

[1] "An *Alford* plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011) (citing *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)).

criminally responsible.[2] *Id.* at 6. In accordance with the report, the trial court found McKinley competent and criminally responsible and proceeded with the plea hearing. *Id.*

McKinley entered an *Alford* plea to second degree murder and use of a handgun in a crime of violence. *Id.* at 8–10. The terms of the plea did not include a binding sentence, with the state recommending the maximum of thirty years on the second degree murder count and a consecutive twenty years on the use of handgun in a crime of violence count. *Id.* at 8, 10. McKinley was free to ask the judge for a lighter sentence and to seek placement at Patuxent Institution. *Id.* at 11.

The trial court conducted a colloquy with McKinley during which he indicated he understood the meaning of an *Alford* plea. *Id.* at 8-10. McKinley also indicted that he understood that he was waiving his rights to a jury or bench trial (*id.* at 12), his right to require the state to prove his guilt beyond a reasonable doubt (*id.* at 12–13), his right to confront the witnesses against him (*id.* at 13), the right to present witnesses in his defense (*id.* at 13), his right to testify in his own defense (*id.* at 13–14), and his right to challenge the indictment (*id.* at 14). McKinley acknowledged that he had reviewed the indictment, the state's evidence, and available defenses with his attorney. *Id.* at 14–15. The trial court found McKinley's plea knowing and voluntary and accepted the plea. *Id.* at 19.

On March 11, 2009, the trial court sentenced McKinley to an aggregate fifty years' incarceration. ECF 7-3, at 23.

---

[2] According to the factual background reported by the Appellate Court of Maryland, McKinley's family advised the state he may suffer from schizophrenia, and he was evaluated by a psychiatrist on November 6, 2008. ECF 7-1, at 131.

3

**B.    State Post-Conviction Proceedings**

Shortly after sentencing, McKinley filed two motions challenging his sentence. On April 7, 2009, McKinley filed an Application for Review of Sentence (ECF 7-1, at 15–16) and on April 14, 2009, he filed a Motion for Modification of Sentence. *Id.* at 17–19. Both were denied. *Id.* at 20–21.

Years later, on March 8, 2018, McKinley filed a petition for postconviction relief pursuant to the Maryland Uniform Post-Conviction Procedure Act, Md. Code Ann., Crim. Proc. ("CP") §§ 7-101–7-204. *Id.* at 23–38. He asserted that his plea was not knowing and voluntary (*id.* at 24–28), his trial counsel was ineffective for failing to file a timely application for review of his sentence (*id.* at 34–36), and his trial counsel was ineffective for failing to file a motion for leave to appeal his plea (*id.* at 36–38). The postconviction court held a hearing on March 14, 2019, during which McKinley and his trial counsel, Kimberly Lewis, testified. ECF 7-4. On October 3, 2019, the postconviction court issued an Opinion and Order of the Court. ECF 7-1, at 41–50. The postconviction court found that he had waived the claim that his plea was knowing and voluntary because he failed to appeal his plea. *Id.* However, the postconviction court also found that McKinley's trial counsel was ineffective for failing to file a motion for leave to appeal his plea and granted him permission to file a belated appeal. *Id.* The postconviction petition was denied in all other respects. *Id.*

McKinley filed an application for leave to appeal the denial of his postconviction petition. *Id.* at 51–56. The Appellate Court of Maryland denied leave on February 6, 2020. *Id.* at 76–77, 79.

4

### C. Appeal of Plea

In accordance with the relief received in his postconviction petition, McKinley filed a belated application for leave to appeal his plea on November 1, 2019. *Id.* at 64–75. On February 6, 2020, the Appellate Court of Maryland granted permission to appeal and transferred the case to the direct appeal docket. *Id.* at 78. McKinley submitted a brief and asserted a single assignment of error: "The record of Mr. McKinley's guilty plea hearing is insufficient to support a finding that his plea was entered knowing and voluntary." *Id.* at 82. On December 21, 2021, the Appellate Court of Maryland denied McKinley's appeal. *Id.* at 129–147. The Supreme Court of Maryland subsequently denied McKinley's petition for a writ of certiorari. *Id.* at 149–152.

### D. Writ of Actual Innocence

On November 7, 2022, McKinley filed a Writ of Actual Innocence with the trial court. *Id.* at 155-161. In his Writ, McKinley asked for DNA testing of certain items of evidence, stating "I believe that the DNA evidence would show someone else is guilty of this crime." *Id.* at 159. On March 27, 2023, the trial court denied the Writ, concluding that McKinley failed to meet the requirements of Md. R. CR. 4-332(d) and finding:

> Md. R. CR. 4-332(d) requires: description of the newly discovered evidence, how and when it was discovered, why it could not have been discovered earlier; and that the newly discovered evidence creates substantial or significant possibility, as that standard has been judicially determined, that the result may have been different. None are contained within this petition.

*Id.* at 162.

### E. Federal Habeas Petition

On March 10, 2023, McKinley filed the present petition for habeas relief, in which he asserts two claims for relief:

(1) McKinley's trial counsel was ineffective for failing to explain the elements of second degree murder (ECF 1, at 5-6);

(2) McKinley's plea was not knowing or voluntary because neither the trial court nor counsel explained the nature of the charges and because the plea failed to comply with the requirements of Maryland Rule 4-242 (*id.* at 5–6).[3]

Respondents filed an answer, arguing that Ground One is procedurally defaulted (ECF 7, at 56) and that both grounds for relief lack merit. *Id.* at 30–55.

## II.   LEGAL STANDARD

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see also Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

---

[3] The claims have been rephrased for clarity.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## III. PROCEDURAL DEFAULT

Respondents argue that Ground One is procedurally defaulted. ECF 7, at 52–55. A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition for post-conviction relief filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. § 7-101–7-103. After a decision on a post-conviction petition, further review is available through an

application for leave to appeal filed with the Appellate Court of Maryland. Md. Code Ann., Crim. Proc. § 7-109. If the Appellate Court denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Respondents argue that Ground One is procedurally defaulted because McKinley never presented a claim to a Maryland state court alleging that his counsel was ineffective during his plea proceedings by allegedly failing to explain the elements of the offense. ECF 7, at 52–55. The Court agrees. In his postconviction proceedings, McKinley asserted that his counsel was ineffective for failing to file an application for leave to appeal and for failing to timely file an application for review of his sentence. ECF 7-1, at 34–38. When he was granted leave to file a belated appeal, he asserted that his plea was not knowing or voluntary but did not assert a claim of ineffective assistance of counsel.[4] *Id.* at 80–107. "To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998); *see also Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001), *aff'd*, 535 U.S. 162 (2002); *accord Breard*, 134 F.3d at 619 (stating that a procedural default occurs when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred (citation omitted)).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one

---

[4] McKinley's appellate brief does not assert a claim for ineffective assistance of counsel, nor does it cite the seminal case on the issue, *Strickland v. Washington*, 466 U.S. 668, 686 (1984); ECF 7-1, at 80–107.

8

who is actually innocent. *See Murray*, 477 U.S. at 495–96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620. To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default doctrine applies. In response to Respondents raising procedural default, McKinley points to his trial counsel's ineffective assistance for failing to file an application for leave to appeal his plea. ECF 12. But McKinley already received relief on this claim in his postconviction petition. McKinley has provided the Court with no explanation for why Ground One was not included in his postconviction petition in the first place or why he failed to include it in his belated appeal once he was granted permission to file it. Indeed, the record reflects that McKinley endorsed, on the record, the three claims that were included in his postconviction petition, understood those were the only claims he was raising, and was waiving all others. ECF 7-4, at 7–8 (affirming that McKinley understood that he was only "raising three issues" before the postconviction court, "that [he was] not advised of the elements of the offense,

9

that counsel failed to file an application for leave to appeal and that counsel failed to file a three-judge panel").

McKinley has not overtly raised actual innocence as an exception to procedural default, however he filed a Writ of Actual Innocence with the trial court. ECF 7-1, at 155–161. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "[The] fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* "In certain exceptional cases involving a compelling claim of actual innocence, however, the state procedural default rule is not a bar to a federal habeas corpus petition." *House v. Bell*, 547 U.S. 518, 522 (2006) (citing *Schlup*, 513 U.S. 298 U.S. at 319–322).

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536–37 (quoting *Schlup*, 513 U.S. at 327). Stated differently, "[a] petitioner's burden at the gateway stage is to demonstrate . . . that more likely than not any reasonable juror would have reasonable doubt." *Id.* at 538. "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "If new evidence so requires, this [review] may include consideration of the credibility of witnesses presented at trial." *House*, 547 U.S. at 538–39 (citation omitted).

The Supreme Court "caution[ed], however, that tenable actual-innocence gateway claims are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. The gateway actual innocence "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see, e.g., McQuiggin*, 569 U.S. at 401 ("We stress once again that the [actual innocence] standard is demanding."); *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Claims of actual innocence . . . presented . . . as gateways to excuse a procedural default . . . should not be granted casually.").

McKinley's procedurally defaulted claim cannot be excused through the gateway actual innocence exception because he offers no new evidence. The content of his state court Writ of Actual Innocence seeks new evidence but does not identify any new evidence which, taken in consideration with the existing evidence, would make it such that "no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. Indeed, both the Statement of Probable Cause and the factual basis of the plea recount that McKinley made inculpatory statements to law enforcement regarding the shooting. ECF 7-1, at 13; ECF 7-2, at 18. A mere request for DNA testing, coupled with the evidence of McKinley's inculpatory statements, falls far short of meeting the strict standard for the actual innocence gateway.

Where McKinley has no basis for excusing his procedural default, Ground One is not properly before this Court and will be dismissed. In any event, as discussed below, even if Ground One was not procedurally defaulted, it would be dismissed for lack of merit.

## IV.   MERITS[5]

McKinley contends in Ground Two that his plea was not knowing or voluntary. He raised this claim in his belated appeal to the Appellate Court of Maryland. ECF 7-1, at 80–107. The Appellate Court of Maryland affirmed the entry of McKinley's guilty plea, finding it knowing and voluntary:

> [McKinley] contends that under the totality of the circumstances, the record was insufficient because (1) [McKinley] did not tell the court "that his attorney had explained to him the nature of the charges[;]" (2) defense counsel did not inform the court that she had explained the nature of the charges to [McKinley]; and (3) the trial court never explained the nature of the charges to [McKinley].
> 
> \*\*\*
>
> Nevertheless, [McKinley] claims that the record is insufficient to support a finding that [McKinley] understood the nature of second-degree murder, because (1) [McKinley] never told the court that defense counsel had explained to him the nature of the charge, (2) defense counsel never informed the court that she had explained to [McKinley] the nature of the charge, and (3) the court never explained to [McKinley] the nature of the charge. We disagree.
>
> When [McKinley] advised the trial court that he had discussed with defense counsel the indictment, the State's evidence against him, and possible defenses, such discussion necessarily involved the nature and elements of the charge of second-degree murder.... Further, a discussion of the State's evidence against [McKinley] necessarily involved a review of the evidence that the State would adduce to prove each element of second-degree murder. Similarly, a discussion of the possible defenses available to [McKinley] involved a review of the evidence, or lack of evidence, that could raise a reasonable doubt as to one or more of the elements of second-degree murder. Finally, [McKinley] advised the trial court that he had discussed the plea agreement with defense counsel, that he had no questions about the plea agreement, and that he was "very satisfied" with the services rendered by defense counsel. Therefore, this Court has no hesitancy in concluding, from the record of the plea hearing, that defense counsel fully advised [McKinley] of the

---

[5] Because McKinley's claims for relief are interrelated, the merits will be addressed together.

nature of the charge to which [McKinley] entered an *Alford* plea, to wit, second-degree murder.

Our conclusion is buttressed by the presumption articulated by the Supreme Court in *Henderson* [*v. Morgan, 426 U.S. 637, 647* (1976)], and adopted by the Court of Appeals in *Priet*, 289 Md. at 290. "The *Henderson/Priet* presumption consists of the notion that ordinarily, 'defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he [or she] is being asked to admit.'" *Tate,* 459 Md. at 628 (quoting *Priet,* 289 Md. at 290, which in turn quoted *Henderson,* 426 U.S. at 647) .... In the instant case, the record, as set forth above, is more than adequate to support the application of the presumption. Therefore, whether this Court draws rational inferences from [McKinley's] plea colloquy or applies the Henderson/Priet presumption, we reach the same result – defense counsel fully advised [McKinley] of the nature of the charge, second-degree murder, to which [McKinley] entered an Alford plea

\*\*\*

The facts proffered by the State at the plea hearing, in our view, clearly describe specific intent to kill or inflict serious bodily harm second-degree murder committed by [McKinley] ... The[] facts clearly indicate that [McKinley] shot Ms. Day in the back of the head while she was lying face down in her bed. The specific intent to kill or inflict serious bodily harm can be inferred from firing a deadly weapon at a vital part of the human body...

\*\*\*

...At the plea hearing, the trial court referred to the evaluation conducted by Dr. Monica Polk at the Perkins Hospital Center. The court stated: "[T]he report is clear that the doctor [found] based on the evaluation, . . . that it's in the doctor's opinion to a reasonable degree of medical certainty, that [McKinley] is competent to stand trial and is criminally responsible." Defense counsel then indicated to the court that she was not going to make any argument disputing these findings.... [McKinley] told the court that he was taking the anti-depressant Elavil, but that this medication did not have any impact on his ability to understand the proceeding. [McKinley] answered "yes" when the court asked him, "Are you fully aware of what is taking place here this morning?," and "So you're fully alert and aware; is that correct?" Therefore, based upon the record of the plea hearing, we conclude that the personal characteristics of [McKinley] did not interfere or lessen his ability to understand the charges against him.

ECF 7-1, at 138–146.

To the extent that McKinley is seeking federal habeas corpus relief because he contends that the Appellate Court of Maryland's conclusion is contrary to Md. Rule 4-242, such a claim is non-cognizable. Maryland Rule 4-242, governing pleas, is a state statute. *Castellon-Gutierrez v. United States,* 754 F. Supp. 2d 774, 780 (D. Md. 2010) ("The failure to strictly comply with Md.

13

Rule 4-242 does not establish a federal due process violation."). "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937 (1979).

However, the Court does not narrowly construe McKinley's petition to only assert a claim based in Maryland law. McKinley contends in Ground Two that his plea was not knowing and voluntary, which the Court accepts as a claim that his federal constitutional rights were violated. The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness. *Brady v. United States*, 397 U.S. 742, 749 (1970); *Henderson*, 426 U.S. at 648 (plurality opinion). The Constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Brady*, 397 U.S. at 755. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson*, 426 U.S. at 645.

In *Bradshaw*, the United States Supreme Court said:

> A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not

14

> met and the plea is invalid…While the court taking a defendant's plea is responsible for ensuring "a record adequate for any review that may be later sought," we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

*Id.* at 182–83 (internal citations omitted).

Noted above, McKinley acknowledged during the plea colloquy that he understood he was entering a plea to second degree murder and use of a firearm during the commission of a crime of violence. ECF 7-2, at 8–9. McKinley also confirmed, *inter alia*, that he understood he was relieving the state of its burden of proof, he was waiving his right to a trial by jury, and he was waiving his right to testify in his own defense. *Id.* at 12–14. Trial counsel did not state on the record that she explained to McKinley the elements of the crimes prior to the plea hearing, but McKinley acknowledged on the record that his counsel read and reviewed the indictment, the state's evidence, and defenses with him. *Id.* at 14–15. As noted above, the Appellate Court of Maryland independently determined on direct appeal that "defense counsel fully advised [McKinley] [McKinley] of the nature of the charge to which [McKinley] entered an *Alford* plea, to wit, second-degree murder." ECF 7-1, at 143.[6]

In the absence of a statement on the record, courts have applied a presumption that defense attorneys usually explain the nature of a charge to their clients. *See Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature

---

[6] During the postconviction hearing, McKinley's trial counsel, Kimberly Lewis, testified that she met with him at least six times. ECF 7-4, at 43. Lewis testified that she discussed with McKinley the nature and elements of second degree murder and use of a handgun in a crime of violence. *Id.* at 44.

15

of the offense in sufficient detail to give the accused notice what he is being asked to admit."). Relying in part on McKinley's representation that he discussed the indictment, the state's evidence, and potential defenses with his counsel, the Appellate Court of Maryland made a factual determination from the plea hearing record that McKinley had, in fact, been advised of the elements of the crimes. The state court's "determination of a factual issue made . . . shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). McKinley has not rebutted the presumption with the required showing of "clear and convincing" evidence. *Id.*

Considering the federal precedent described above, which allows for a presumption that trial counsel discussed the elements of second degree murder and use of a handgun in a crime of violence, coupled with the state court's factual determination that McKinley had been advised of the elements, it was not an unreasonable application of federal law for the state court to conclude that McKinley had been adequately informed of the nature of the charges against him. Ground Two is without merit and is dismissed.

Although procedurally defaulted, the Court finds that the contention in Ground One that McKinley's counsel was ineffective for failing to advise him of the elements of the charges also lacks merit. "The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. 100.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. 100. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. 100. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of plea proceedings, the performance standard remains the same, but the prejudice prong of the test requires that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court has emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

As discussed above, McKinley has failed to demonstrate by the requisite standard that his counsel failed to explain the elements of the charges to him. Thus, he cannot demonstrate that his counsel's performance was deficient. Regardless, McKinley fails to show that he would have insisted on going to trial if the elements of second degree murder had been explained to him on

the record, or otherwise. The record reflects that McKinley made inculpatory statements to law enforcement and the state intended to seek life without the possibility of parole if the matter proceeded to trial. Considering the strong evidence of guilt and the likely sentence of life without the possibility of parole had the matter gone to trial, it would not have been objectively reasonable for McKinley to reject the plea that he accepted. Ground One is without merit and would be dismissed even if not procedurally defaulted.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the Court has denied the petition on the merits, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Upon a review of the record, this Court finds that McKinley has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. McKinley may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. Fed. R. App. P.22.

## VI. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED. The Court will decline to issue a certificate of appealability. A separate order shall issue.

January 21, 2026  
Date

/s/  
Brendan A. Hurson  
United States District Judge